**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**WORCESTOR DIVISION**

| | |
|---|---|
| **VIKTORIYA** ) | |
| **KORLESHCHUK-PETRIE,** ) | |
|    **Plaintiff,** ) | |
| ) | |
|   **v.** ) | **COMPLAINT AND DEMAND FOR JURY** |
| ) | **TRIAL** |
| **UNITED STATES OF AMERICA.** ) | |
|    **Defendant** ) | |
| ) | |

## COMPLAINT

Plaintiff, Viktoriya Korleshchuk-Petrie (FKA Viktoriya Vasilivna Korleshchuk), by and through her undersigned counsel files this complaint and alleges the following against defendant, the United States of America:

### PARTIES

1. The Plaintiff is Viktoriya Korleshchuk-Petrie, a United States citizen who resides in West Boylston, MA.

2. The Defendant is the United States of America.

### JURISDICTION

3. Plaintiff seeks a refund of $11,474.20 plus applicable interest and penalties wrongfully taken by the Internal Revenue Service ("IRS") to satisfy a joint tax liability assessed against her for the 2007 tax year.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1) and 26 U.S.C. § 7422(a).

5. On June 26, 2017, the remaining account balance for tax year 2007 was listed on her IRS Account Transcript as written off in full, resulting in a $0 account balance due.

6. It is unknown to Plaintiff why the balance was written off on that day.

7. No further assessments after June 26, 2017 appear on Plaintiff's 2007 IRS Account Transcript.

8. Upon information and belief, Plaintiff's total tax liability reached the Collections Statute Expiration Date ("CSED"), pursuant to 26 U.S.C. §6502, by late 2018.

9. Upon information and belief, Plaintiff's total tax liability for the 2007 tax year, has also been paid in full after she involuntarily paid $11, 474.20 toward the liability through IRS refund offsets taken after the expected CSED made the liability uncollectible.

10. The Plaintiff's total refund request of $11,474.20 for tax year 2007 comprises two payments made by Plaintiff.

11. On March 25, 2019, Plaintiff's 2018 personal income tax refund of $3,798.00 ("Payment 1") was taken by the IRS and applied to offset the 2007 tax year liability.

12. On July 20, 2020, Plaintiff's 2019 personal income tax refund of $7,676.20 ("Payment 2") was taken and applied to offset the 2007 tax year liability.

13. The $7,676.20 offset from Plaintiff's 2019 refund did not encompass the whole amount of her refund.  Because she was allowed to retain a portion of that refund, Plaintiff believes Payment 2 paid off the full remaining balance for tax year 2007, even though that balance should have been written off by the CSED in 2018.

14. Plaintiff's 2018 and 2019 tax year refunds (Payments 1 and 2) were thus offset against the 2007 tax year liability after the 2007 tax year liability reached the CSED.

15. Plaintiff has exhausted her administrative remedies as required by 26 U.S.C. § 7422(a) by filing two distinct administrative claims with the IRS prior to this action, the first regarding Payment 1 and the second regarding Payment 2.

16. On July 8, 2019, Plaintiff filed the first administrative claim for Payment 1 when she filed Form 8857, "Request for Innocent Spouse Relief," in which she requested a refund of Payment 1 on the basis that the 2007 liability had expired prior to the time of the offset and that, even if the 2007 liability had not expired prior to the time of the offset, she was not liable for the 2007 liability under the innocent spouse relief provisions of 26 U.S.C. § 6015(f).

17. As Plaintiff had previously applied for, and been denied, innocent spouse relief of the 2007 liability by the IRS in 2018, her 2019 application for relief and for a refund was processed by the IRS as a request for reconsideration of her innocent spouse claim.

18. Plaintiff maintained in her refund request, and maintains in the instant action, that the IRS wrongfully denied her Innocent Spouse Relief for tax year 2007 under 26 U.S.C. § 6015(f).

19. On December 5, 2019, the IRS denied Plaintiff's first administrative refund claim for Payment 1.

20. Plaintiff has timely filed this suit for refund of Payment 1 within two years of the rejection of her first refund claim by the IRS, as required by 26. U.S.C. §6532 and Treas. Reg. § 301.6532(1)(a).

21. On June 3, 2021, Plaintiff filed a second administrative refund claim for refund of Payment 2 when she filed Form 843 Claim for Refund and Request for Abatement for the $7,676.20 wrongfully offset from her 2019 refund on July 20, 2020.

22. Plaintiff has timely filed this suit for refund of Payment 2 after the expiration of six months from the date of the filing of her second refund claim, as required by 26. U.S.C. §6532 and Treas. Reg. § 301.6532(1)(a).

## VENUE

23. Venue is proper in this district under 28 U.S.C. § 1391(e) because defendant is the United States of America and plaintiff resides in the District of Massachusetts.

## FACTS

24. Plaintiff is a 44-year-old woman, born and raised in the Donetsk region of Ukraine.

25. Plaintiff met her former husband, John Petrie ("John") online.

26. Plaintiff moved to the United States in September of 2007.

27. Plaintiff married John on October 13, 2007.

28. Plaintiff has two sons with John, ages 11 and 7 at the time of the filing of this complaint.

29. From 2007 to 2015, John independently ran an internet business.

30. Plaintiff was not involved in John's business in any way, as John did not discuss the nature of the business or its finances with Plaintiff.

31. From 2007 to 2013, Plaintiff was a homemaker and was not privy to information regarding the household's finances.  In 2013 she began working for the first time in the United States and only then started to gain some limited control over the household budget.

32. Plaintiff had been forbidden by John from seeking employment, as well as from having social interactions and forming friendships in the United States.

33. Plaintiff was not permitted to drive any of John's three luxury vehicles.

34. John enforced the restrictions he placed on Plaintiff's behavior with threats of deportation and verbal and physical abuse.

35. From 2007 to 2019, John and Plaintiff shared a house with their two children at 351 Pommogussett Road, Rutland, MA ("the Rutland house").

36. Plaintiff was not named on the deed to the Rutland house.

37. In 2019, the Rutland house was repossessed.

38. On April 17, 2014, The United States District Court for the District of Utah, Central Division issued a warrant for John's arrest on charges related to selling controlled substances. Law enforcement then raided the Rutland house.  John was arrested.

39.  On April 30, 2014, The United States District Court for the District of Massachusetts, in Docket No. 4:14-mj-04165-DHH, ordered John to appear before the United States District Court for the District of Utah.

40. On April 7, 2015, after accepted a guilty plea agreement, the U.S. District Court for the District of Utah, in Docket No. 2:14-cr-000201-001, found John guilty of Distribution of a Controlled Substance per 21 U.S.C. § 841(a)(1), Money Laundering per 18 U.S.C.§ 1956(a)(3)(A), and Smuggling Goods into the United States, per 18 U.S.C. § 545.

41. John was sentenced to 12 months and 1 day imprisonment.

42. On October 15, 2015, John filed for a Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts, Docket No. 4:15-bk-41988.  The case was dismissed on January 31, 2017.

43. On April 14, 2017, John again filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the District of Massachusetts, Docket No. 4:17-bk-40692. That case was also dismissed on August 22, 2017.

44. On December 11, 2017, John filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Massachusetts, Docket No. 4:17-bk-42190. Plaintiff is unclear as to the final disposition of that case.

45. Plaintiff has never filed for bankruptcy, either singly or as a joint debtor.

46. Plaintiff's CSED on her tax liability has therefore never been tolled by bankruptcy actions.

47. Plaintiff was the sole earner for the household during John's incarceration.

48. After John's release from prison, he no longer worked and instead fought with Plaintiff constantly about how to spend Plaintiff's income.

49. After his release from incarceration, John inflicted more frequent psychological and physical abuse onto Plaintiff.

50. John stole Plaintiff's wallet twice, which contained her driver's license and credit cards, and kept it for several days.

51. John also physically pushed Plaintiff and on one occasion, forced Plaintiff out of the home and refused to let her back inside.

52. In 2015, Plaintiff sought help from a workplace counselor to cope with the constant humiliation and intimidation inflicted on her by John.

53. Plaintiff regularly sees a psychologist.

54. Plaintiff currently suffers from high blood pressure, thyroid issues, and loss of teeth due to the stress from her years of abuse by John.

55. On June 14, 2019, Plaintiff requested and received an abuse protection order from the East Brookfield District Court, Docket No. 1969RO166, following an incident in which John hit their younger son.

56. The June 14, 2019 order required that John not contact Plaintiff and stay at least 15 yards away from Plaintiff until June 17, 2019.

57. On June 17, 2019, the abuse protection order was extended to August 2, 2019, and narrowed to "no abuse only".

58. On July 17, 2019, the abuse protection order was extended, following a full hearing with a Russian interpreter, to include no contact from John and that decisions around the children should be made by the probate court. This order expired on September 5, 2019, subject to rehearing.

59. On September 5, 2019, the abuse protection order was extended to September 4, 2020.

60. On September 5, 2020, the order was again extended to September 4, 2021.

61. Since July 17, 2019, Plaintiff and John have been separated.

62. On January 15, 2021, Plaintiff obtained a divorce from John in the Worcestor County Probate and Family Court, Docket No. WO19D1838.

63.  The Judgment of Divorce orders John to reimburse Plaintiff for her losses due to his 2007 tax liabilities.  Plaintiff has not been able to enforce this provision.

64. After leaving John, Plaintiff lived in a domestic violence shelter.

65. Plaintiff and her children are currently being supported by government assistance with housing and other necessities.

66. Plaintiff currently works as a medical lab assistant providing cleaning services.

67. Plaintiff has legal and physical custody of the children.

68. From 2007 to 2013, John exerted full control of the household's finances, including the preparation of tax returns.

69. From 2007 to 2013, John's accountant prepared and filed all of John and Plaintiff's joint tax returns.

70. Plaintiff was not involved in preparing the 2007 through 2013 tax returns and was unaware of the purpose of the filings.

71. When Plaintiff was asked to sign the 2007 tax return, Plaintiff was informed that the returns were for John's business and that her signature was required only because she was his wife.

72. Plaintiff does not speak English, and John and his accountant do not speak Russian (Plaintiff's language).

73. No attempt at translation or communication was made by either John or his accountant to inform Plaintiff of the joint and several liability associated with filing a joint tax return.

74. The 2007 through 2013 tax returns were prepared in English, which Plaintiff could not read.

75. Plaintiff was not given an opportunity to review the 2007 through 2013 tax returns, and signed the returns on the basis of John's insistence.

76. Since the 2014 tax year, Plaintiff has filed her taxes separately from John.

77. Since 2014, Plaintiff has consistently paid her taxes in full.

78. In 2017, Plaintiff received the first notice from the IRS indicating a tax liability of approximately $10,850 related to the 2007 joint tax return.

79. When Plaintiff questioned John after receiving the IRS notice, John assured her that he would take care of it.

80. On June 26, 2017, the 2007 tax year liability was written off in full by the IRS, resulting in a $0 account balance due.

81. The account transcript shows no further assessments on tax year 2007 were made by the IRS.

82. In 2018, Plaintiff received another letter from the IRS regarding the 2007 tax liability.

83. When Plaintiff questioned John about the second notice, John said that because Plaintiff was now working, she could take care of it.

84. Plaintiff then contacted the IRS to inquire as to the liability.

85. In an oral exchange with an IRS representative, Plaintiff was denied an interpreter and was told the matter was self-explanatory. The representative also told her the IRS would garnish her wages and take her car if she did not pay, and then told her to consult an accountant.

86. In either late 2017 or early 2018, Plaintiff submitted Form 8857, Request for Innocent Spouse Relief to the IRS, seeking relief as the 2007 tax year liability.

87. On March 24, 2018, the IRS issued to Plaintiff a Final Notice of Determination denying her administrative request for innocent spouse relief.

88. Plaintiff did not understand the notice and did not understand that she had 90 days to petition the Tax Court to appeal the decision.

89. Plaintiff did not file a petition in the Tax Court on the basis of the denial of her innocent spouse request by the statutory deadline of June 28, 2018.

90. On March 25, 2019, Plaintiff's 2018 tax refund in the amount of $3,798.00 was taken and applied to the 2007 tax year liability.

91. On July 8, 2019, Plaintiff submitted an administrative claim seeking her 2018 tax refund of $3,798.00 in the form of a request for reconsideration of her Request for Innocent Spouse Relief.

92. Plaintiff's July 8, 2019 refund claim also included an alternate basis for refund relying on the fact that the 2007 tax year liability had been written off by the IRS in 2017.

93. On December 5, 2019, the IRS denied Plaintiff's administrative claim requesting her 2018 tax refund of $3,798.00.

94. On July 20, 2020, Plaintiff's 2019 tax refund of $7,676.20 was taken and applied to offset the 2007 tax year liability.

95. On June 3, 2021, Plaintiff filed a second administrative claim for refund of her 2019 tax refund when she filed Form 843 Claim for Refund and Request for Abatement for the $7,676.20 she had paid on July 20, 2020 to offset the 2007 tax year liability.

96. Upon information and belief, Plaintiff has paid the 2007 liability in full through (1) a payment consisting of her 2018 tax refund in the amount of $3,798.000, paid on March 25, 2019 ("Payment 1") and (2) a payment consisting of her 2019 tax refund in the amount of $7,676.20, paid on July 20, 2020 ("Payment 2").

FIRST CLAIM FOR RELIEF

97. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 96, above.

98. The United States of America, through the activity of the IRS, has unlawfully and erroneously collected $11,474.20, plus applicable interest, after no balance was due to the IRS by the taxpayer.

99. The Plaintiff is therefore entitled to recover from the United States of America the $11,474.20, plus applicable interest, pursuant to 28 U.S.C. § 1346(a)(1).

SECOND CLAIM FOR RELIEF

100.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 96, above.

101.     The United States of America, through the activity of the IRS, has unlawfully denied Plaintiff a refund of $11, 474,20, plus applicable interest, pursuant to her claim that she is entitled to relief from joint and several liability as an innocent spouse, pursuant to 26 U.S.C. §6015.

102.     The Plaintiff is therefore entitled to recover from the United States of America the $11,474.20, plus applicable interest, pursuant to 28 U.S.C. § 1346(a)(1).

DEMAND FOR JURY TRIAL

103.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in all of the issues set forth in this Complaint.

WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor against the United States of America as follows:

Return of the $11,474.20, plus applicable interest, to Plaintiff, pursuant to 28 U.S.C. § 1346(a)(1).

Such other relief as may be justified.

DATED: December 6, 2021

Respectfully submitted,

For the Plaintiff Viktoriya Korleshchuk-Petrie:

/s/    *Audrey Patten*                                      
Audrey Patten, BBO# 686077
WilmerHale Legal Services Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
Phone: (617) 390 – 2550
Facsimile: (617) 522-0715
apatten@law.harvard.edu